UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MESA OIL, INC. ) | |
| d/b/a Mesa Environmental ) | |
| ) | Case No. 17-14004-EEB |
| ) | |
| EIN:   85-0295589 ) | |
| ) | |
| Debtor. ) | |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

The Debtor, Mesa Oil, Inc. d/b/a Mesa Environmental ("Debtor"), by and through its attorneys, Kutner Brinen, P.C., moves the Court pursuant to 11 U.S.C. §§ 361 and 363 and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtor's use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor states as follows:

1. The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on May 2, 2017 ("Petition Date"). The Debtor remains a debtor-in-possession.

2. The Debtor is a wholesale supplier and processor of blended fuel products, and recycles used oil, fuel, antifreeze, and related products through its facilities in Colorado, Arizona, and New Mexico.

3. On the Petition Date, the Debtor had real and personal property assets in the amount of approximately $2,920,617.63, and cash in accounts in the amount of approximately $12,482.78.

4. The Debtor believes that the Debtor's assets, including its cash and accounts, may be subject to a first position lien in favor of the IRS as a result of the filing of tax liens in Adams County, Colorado, Valencia County, New Mexico, Maricopa County, Arizona, and with the Arizona Secretary of State. The Debtor's books and records reflect that the IRS is owed approximately $2,930,000 on the Petition Date. The Debtor reserves the right to challenge the adequacy of perfection of any liens asserted by the IRS.

5. The Debtor further believes that its assets may be subject to a second position lien in favor of Vertex Refining LA, LLC ("Vertex"). Pre-petition, on or about September 28, 2015, the Debtor entered into a UMO Purchase Agreement and Security Agreement with Vertex, pursuant to

which Vertex was granted a secured interest in the Debtor's inventory, including raw materials, works-in-progress, and finished goods, the Debtor's equipment, and the proceeds therefrom. The Debtor's books and records reflect that Vertex is owed approximately $682,975.95 on the Petition Date.

6. The Security Agreement further provides that Vertex's secured interest shall be subordinated to liens held by the IRS.

7. On or about March 27, 2017, approximately 36 days prior to the Petition Date, Vertex filed a UCC-1 financing statement with the Colorado Secretary of State. As such, the Debtor believes the lien in favor of Vertex may be avoidable in its entirety. *See* 11 U.S.C. § 547(b), (e).

8. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization, which will provide for the continuation of the Debtor's business.

9. In order to pay necessary operating expenses, the Debtor must immediately use Cash Collateral in which the IRS and Vertex may have an interest. The Debtor proposes to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash collateral. At the final hearing, the Debtor will seek relief to use cash collateral pursuant to a budget which is attached hereto. On an interim basis over the next four (4) weeks, the Debtor has prepared a budget setting forth its expected revenues and cash use. A copy of the budget is attached hereto and incorporated herein as Exhibit A ("Budget"). The Debtor proposes to meet the Budget subject to the ability to deviate from the Budget by up to 15% per line item, per month.

10. The Budget reflects a conservative analysis of the Debtor's income and expenses over the projected periods. Pursuant to the Budget, while the Debtor may experience an initial loss, the Debtor's aggregate net income is anticipated to be positive over the budgeted time period.

11. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. With the use of cash collateral, the Debtor will not be able to pay employees, vendors, and other costs associated with operating its business. In particular, the Debtor is dependent upon its employees and its inventory. Without the ability to pay its employees on an ongoing basis, the Debtor not be able to sustain its operations.

12. The Debtor will be replacing its cash, and cash equivalents in the course of its daily operations. Additionally, the Debtor believes that the value of the assets are stable as long as the Debtor continues to operate. Therefore, the collateral base will remain stable.

13. In order to provide adequate protection for the Debtor's use of cash collateral to creditors claiming a secured interest, to the extent such secured creditor is properly perfected, the Debtor proposes the following:

   a. The Debtor will provide a replacement lien on all post-petition accounts and to the extent that the use of the cash collateral results in a decrease in the value of the collateral pursuant to 11 U.S.C. § 361(2);

   b. The Debtor will maintain adequate insurance coverage on all personal property and adequately insure against any potential loss;

   c. The Debtor shall provide to the IRS and Vertex all periodic reports and information filed with the Bankruptcy Court, including debtor-in-possession reports;

   d. The Debtor will only expend cash collateral pursuant to the Budget subject to reasonable fluctuation by no more than 15% for each expense line item per month;

   e. The Debtor will pay all post-petition taxes; and

   f. The Debtor will retain in good repair all collateral in which Compass has an interest.

14. Should the Debtor default in the provision of adequate protection, the Debtor's approved use of cash collateral will cease and secured creditors will have the opportunity to obtain further relief from this Court.

15. Approval of the Debtor's use of cash collateral in accordance with this Motion and pursuant to the Budget, Exhibit A, is, on an interim basis and a final basis, in the best interest of the Debtor, its creditors and the estate as it will allow the Debtor to maintain its ongoing business operations, allow the Debtor to generate revenue, and provide the Debtor with an opportunity to propose a meaningful Plan.

## REQUEST FOR EMERGENCY HEARING ON INTERIM RELIEF

16. Without the immediate use of cash collateral, the Debtor will not be able to fund ongoing business operations. The Debtor therefore respectfully requests that the Court set an

emergency hearing for the consideration of the interim use of cash collateral and continue such hearing as may be needed to allow for extensions of interim use.

17. The proposed form of order does not contain any provision of the type indicated in the appendix at L.B.R. 4001-3(a) App.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, authorizing the Debtor's use of cash collateral in accordance with this Motion, authorize the Debtor to provide adequate protection to any properly perfected secured party in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: May 3, 2017

Respectfully submitted,

By: */s/ Keri L. Riley*
Jeffrey S. Brinen, #20565
Keri L. Riley, #47605
**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
Email: klr@kutnerlaw.com