UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) |
| MESA OIL, INC. | ) |
| d/b/a Mesa Environmental | ) |
| | ) Case No. 17-14004-EEB |
| | ) |
| EIN:   85-0295589 | ) |
| | ) |
| Debtor. | ) |

## DECLARATION OF LAWRENCE MEERS

I, Lawrence Meers, President of Mesa Oil, Inc. make this Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**Background**

1. The Debtor, Mesa Oil, Inc. d/b/a Mesa Environmental ("Debtor"), filed its voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on May 2, 2017 ("Petition Date").

2. I am the President of the Debtor and am familiar with its operations and financial history.

3. The Debtor is a Colorado corporation that operates as a wholesale supplier and processor of blended fuel products, and recycles used oil, fuel, antifreeze, and related products through its facilities in Colorado, New Mexico, and Arizona. The Debtor's principal place of business is 6395 East 80th Avenue, Commerce City, Colorado 80022.

4. The Debtor owns real property in New Mexico where in conducts business. The Debtor does not own real property in Colorado or Arizona.

5. The Debtor previously filed a Chapter 11 Bankruptcy Case on September 18, 2010, Case No. 10-33755-ABC ("2010 Case"). The Debtor's Revised Plan Dated March 19, 2012 was confirmed by the Court on October 3, 2012 ("Confirmed Plan").

6. The Debtor was operating successfully under the Confirmed Plan until 2014 when the price of oil dropped to unsustainable prices. The substantial decrease in the price per barrel of oil resulted in a substantial decrease in the Debtor's business and significant losses.

7. As a result of the Debtor's losses, the Debtor was unable to remain current on its tax obligations, resulting in a large debt to the IRS. It appears that the IRS filed a tax lien against

the Debtor's real property in New Mexico, and a UCC-1 financing statement with the Arizona Secretary of State. The IRS also appears to have filed tax liens with the clerk and recorder in Adams County, Colorado. The Debtor's books and records reflect that Debtor owed the IRS approximately $2,930,000 on the date of filing.

8. On or about September 28, 2015, the Debtor entered into a Used Motor Oil Buy/Sell Contract ("UMO Purchase Agreement") and Security Agreement with Vertex Refining LA, LLC. Pursuant to the UMO Purchase Agreement and the Security Agreement, Vertex agreed to advance funds to the Debtor on a revolving basis for the purpose of covering all or some of the Debtor's costs incurred in delivering the product to Vertex. In exchange for the revolving advances, the Debtor granted Vertex a second-position secured interest in its inventory, certain equipment, and the proceeds therefrom.

9. Vertex perfected its secured interest through the filing of a UCC-1 Financing Statement on or about March 27, 2017.

10. The Debtor's books and records reflect that the Debtor owed Vertex approximately $682,975.95 on the date of filing.

11. As a result of the accruing tax debt, the Debtor elected to file its voluntary petition pursuant to Chapter 11 of the Bankruptcy Case on May 2, 2017 in order to restructure its obligations and reorganize its business.

**Use of Cash Collateral**

12. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which the IRS and Vertex may have an interest.

13. The Budget attached to the Motion for Authority to Use Cash Collateral reflects a conservative analysis of the Debtor's income and expenses over the projected periods.

14. The majority of the Debtor's revenues and available cash come from sales of inventory and the recycling services it provides. Without the use of cash collateral, the Debtor will have insufficient funding to continue its operations. Specifically, the Debtor will not be able to pay its employees, vendors, rent, and other costs associated with business operations.

15. The Debtor will be replacing the cash and cash equivalent in the course of its daily operations. Additionally, the value of the Debtor's business assets, specifically its fixtures and equipment, will remain stable. The Debtor's income is projected to be positive over the budgeted period.

**Payment of Pre-Petition Wages**

16. As of the Petition Date, the Debtor has 34 employees ("Employees"). In the ordinary course of business, the Employees are paid bi-weekly.

17. It is necessary for the Debtor to compensate the Employees in order to retain their continued and uninterrupted services, which is essential to the Debtor's continued operations.

18. As of the Petition Date, the Debtor owed its employees gross wages totaling $85,056.39 ("Prepetition Wages"), comprised of deductions for federal and state withholding taxes, Medicare, and social security in the amount of $23,179.64, and net pay to employees in the amount of $61,876.75.

19. I believe that any delay in paying Prepetition Wages will adversely affect the Debtor's relationship with its Employees, damage morale, and hinder cooperation.

20. The Employees are vital to the Debtor's operations. I am certain that if the Employees are not paid their Prepetition Wages, they will leave the company, severely impeding the Debtor's ongoing operations. No amount due to any employee exceeds the statutory priority claim amount for employee wage claims set forth in 11 U.S.C. § 507(a)(4)

The preceding statements are true and correct to the best of my knowledge and belief.

/s/ Lawrence Meers*
Lawrence Meers

*Original signature maintained on file with counsel for the Debtor*